OPINION.
Having been initially convicted of six charges of cruelty to animals, in violation of R.C. 959.13(A)(1), misdemeanors of the second degree, defendant-appellant Anita Bybee appeals from the trial court's order committing her to five hundred and forty days of home incarceration for violating probation by failing to make restitution payments in excess of $117,625 to the SPCA. She challenges the sentence imposed, contending that (1) the trial court was without authority to impose restitution to the SPCA for a misdemeanor conviction; and (2) consecutive sentences were erroneously imposed in contravention of R.C. 2941.25, because the six convictions involved allied offenses of similar import. Despite the fact that the trial court's sentence was well intentioned, we must reverse its order of restitution because it was an invalid condition of probation, and we must further vacate the sentences because they were impermissibly imposed for allied offenses of similar import.
The charges stemmed from the deplorable condition of dogs found in the abysmally filthy kennel operated by Bybee, a sixty-eight-year-old widow, and her daughter. Accordingly, local law-enforcement officials and the Hamilton County SPCA confiscated one hundred eighty-eight dogs that were badly matted, undernourished, and neglected. On July 7, 1995, following Bybee's pleas of no contest, the trial court sentenced her to ninety days' home incarceration, a seven-hundred-and-fifty-dollar fine, and costs on each of the six complaints charging her with cruelty to animals in violation of R.C. 959.13(A)(1). The trial court suspended execution of the sentence, placed Bybee on five years' probation, and ordered her to pay the fines and costs through the probation department.
Before sentence was imposed, the prosecutor informed the trial court that the SPCA had incurred costs to board Bybee's dogs in the amount of $1,104 per day for one hundred twelve days, totaling $131,261.50. As one of the conditions of probation, the trial court ordered Bybee to reimburse the SPCA for the expenses remaining after the sale of the dogs.
A year later, on June 28, 1996, Bybee filed a motion requesting clarification of the order of restitution, because the probation department was demanding, in addition to $4,500 in fines, payment of restitution to the SPCA in the sum of $117,625.97. At the hearing on the motion, defense counsel told the trial court that while Bybee's real property was worth $450,679, the Small Business Administration had a lien against it for $288,479. He further advised the court that there were no prospective buyers. The trial court continued the hearing to August 6, 1996, to allow defense counsel to negotiate an amount for a second mortgage or to agree to a means for payment of restitution. When Bybee next appeared with her counsel, the trial court ordered her to give the SPCA a note and mortgage in the sum of $117,625.
On October 16, 1997 the probation department filed a complaint asking the trial court to violate Bybee's probation for "[f]ailure to pay fine and cost as scheduled — Balance Due $802.00. Failure to report as scheduled." Bybee entered a not-guilty plea, but stipulated the facts at the revocation hearing held on July 17, 1998. Her probation officer stated that the probation department had calculated her payments toward fines and restitution at $2,557.08 per month. After thirty-six months, according to the probation officer, Bybee had paid only $1,243. Bybee told the trial court that her only income was $485 per month from social security, from which she paid $250 per month to her daughter for rent. The trial court found Bybee guilty of the violation, terminated her probation, committed her to home incarceration on the six ninety-day prison terms, to run consecutively, and remitted the unpaid fines.
In her first assignment of error, Bybee argues that the trial court erred in revoking her probation on the basis of her failure to comply with what she asserts was an unlawful order to pay restitution.
Bybee first contends that the trial court was without statutory authority to order restitution. In response, the state relies on State v. Sheets (1996), 112 Ohio App.3d 1,677 N.E.2d 818, from the Fourth Appellate District, in which the court affirmed the surrender of, but not the restitution for the expenses for maintaining, a number of horses as a condition of probation, because the surrender was reasonably related to preventing future criminality.
While trial courts are given broad discretion in defining conditions for the probation of a criminal defendant, where the legislature has provided a statutory remedy, the court must adhere to the conditions necessary for its imposition. See State v.Beasley (1984), 14 Ohio St.3d 74, 75, 471 N.E.2d 774, 775. We have previously held that a special condition of probation that required a defendant convicted of felony domestic violence to execute a quitclaim deed to the victim, who jointly owned the property, exceeded the court's jurisdiction when the sanction wasnot provided by law. See State v. Mueller (1997), 122 Ohio App.3d 483,702 N.E.2d 139.
A trial court may order restitution pursuant to R.C.2929.21(E), which states:
 The court may require a person who is convicted of or pleads guilty to a misdemeanor to make restitution for all or part of the property damage that is caused by the offense or for all or part of the value of the property that is the subject of any theft offense * * *."
This same restrictive language is repeated in R.C.2951.02(C)(1)(a), which identifies the criteria for the suspension of a sentence in a misdemeanor prosecution.
The Eleventh Appellate District has held that ordering a defendant convicted of cruelty to animals to make restitution to a humane society for its expenses in caring for animals that had been removed from the defendant's home did not constitute "property damage" under R.C. 2929.21(E) and was invalid. State v.Orr (1985), 26 Ohio App.3d 24, 498 N.E.2d 181. Similarly, inState v. Hileman (1998), 125 Ohio App.3d 526, 708 N.E.2d 1078, the Twelfth Appellate District held that it was error to order restitution to a humane society.
We agree with and adopt the reasoning enunciated in these cases: expenses incurred in caring for animals removed from Bybee's kennel was not property damage as defined in R.C.2929.21(E), and the trial court erred in ordering restitution to the SPCA for those costs as a condition of probation. This holding, however, has no effect on the SPCA's ability to receive fines collected pursuant to R.C. 959.13. The SPCA also has recourse, by means of a civil action, for its expenses related to the care of the dogs.
We further agree with Bybee's second contention that the trial court's order to pay restitution of $117,625.07 to the SPCA was an in personam criminal forfeiture amounting to an excessive fine under the Eighth Amendment to the U.S. Constitution. The state's brief neglects to address this issue.
An in personam criminal forfeiture is an action against a person whereas an in rem forfeiture is an action against the property itself. An in personam criminal forfeiture is a form of punishment that does not differ from a fine. See Alexander v.United States (1993), 509 U.S. 544, 558-559, 113 S.Ct. 2766,2775-2776; United States v. Wild (C.A.4, 1994), 47 F.3d 669, 674. "In personam forfeitures involve "assessments, whether monetary or in kind, to punish the property owner's criminal conduct." Austinv. United States (1993), 509 U.S. 602, 624, 113 S.Ct. 2801, 2813
(Scalia, J., concurring). Writing for the court in State v.Ziepfel (1995), 107 Ohio App.3d 646, 669 N.E.2d 299, Judge Painter undertook an exhaustive analysis of the federal approach to and treatment of in rem forfeitures and criminal in personam
forfeitures, as well as how the Ohio Supreme Court views the test of constitutionality for forfeitures under the Ohio Constitution. See State v. Hill (1994), 70 Ohio St.3d 25, 635 N.E.2d 1248.
In Wild, supra, at 676, the Fourth Circuit Court of Appeals said:
 [I]n personam criminal forfeitures * * *, which operate on the premise that the property being forfeited was obtained independent of any illegal activity, are subject to an excessiveness inquiry. That inquiry essentially asks whether the value of the property being forfeited is an excessive monetary punishment in relation to the offense giving rise to the forfeiture. In other words, the excessiveness inquiry turns on whether the government can exact a fine in the amount of the forfeiture in light of the defendant's conduct and the offense committed. The inquiry beckons a comparison of the value of the property being forfeited to the gravity of the offense committed by the defendant and the nature and extent of the defendant's activities.
Although the trial court did not order the restitution of $117,625.09 pursuant to a statute, as is the case of the usual forfeiture, we hold that its order has all the badges of a criminal in personam forfeiture subject to the Excessive Fines Clause of the Eighth Amendment. Accordingly, even if our holding was otherwise with respect to the validity of restitution as a condition of probation, we would be required to remand this case to the trial court for an assessment of the proportionality of the forfeiture under the guidelines outlined in Ziepfel, supra, at 652-653, 669 N.E.2d at 303.
The first assignment of error is sustained.
In her second assignment of error, Bybee argues that the six convictions for cruelty to animals involved allied offenses of similar import and that, therefore, the trial court's imposition of multiple sentences was precluded by R.C. 2941.25. Although Bybee raises this issue for the first time on appeal from the order revoking her probation, we, nevertheless, have jurisdiction to review a sentence initially suspended but subsequently given effect at a revocation hearing. See, e.g., State v. McMullen
(1983), 6 Ohio St.3d 244, 452 N.E.2d 1292. Furthermore, we have discretion to review Bybee's multiple sentences under a plain-error analysis pursuant to Civ.R. 52(B). See State v.Fields (1994), 97 Ohio App.3d 337, 646 N.E.2d 866.
A two-step inquiry determines if offenses are allied and of similar import: (1) do the elements of the offenses correspond to such a degree that commission of one results in commission of the other; and (2) were the offenses part of the same conduct, or was there a separate animus for each crime? Id. at 249, 656 N.E.2d at 1361. Bybee's essential concern is that, by giving out six sentences, the trial court imposed multiple punishments for one offense in violation of the Double Jeopardy Clause. NorthCarolina v. Pearce (1969), 395 U.S. 711, 717, 89 S.Ct. 2072, 2076;State v. Thomas (1980), 61 Ohio St.2d 254, 260, 400 N.E.2d 897,902.
Here, the six charged offenses satisfy the first step of the analysis requiring comparison of the statutory elements "in the abstract," as the elements of cruelty to animals charged in each complaint were identical. State v. Rance (1999), 85 Ohio St.3d 632,710 N.E.2d 699, paragraph one of the syllabus. Although each charge related to a different dog, Bybee's offenses were part of the same continuing pattern of neglect and did not rely on a distinct abusive act for each dog. As we have previously stated, "the crimes were not committed with separate conduct" sufficient to satisfy the second step of the analysis. State v. Williams
(Dec. 31, 1996) Hamilton App. No. C-960070, unreported. Therefore, we hold that Bybee's six convictions for cruelty to animals involved allied offenses of similar import and must be merged into one conviction. While the trial court can find her guilty of the six offenses, it should have sentenced her only on one. The second assignment of error is sustained.
Therefore, we reverse the trial court's order revoking Bybee's probation, vacate the multiple sentences imposed as part of the original convictions, and remand these causes to the trial court for resentencing in accordance with law and consistent with this Opinion.
Judgment accordingly.
 Doan, P.J., and Painter, J., concur.
Please Note:
The court has placed of record its own entry in this case on the date of the release of this Opinion.