The STATE of Ohio, Appellee,

v.

FAIN, Appellant.

[Cite as *State v. Fain,* 188 Ohio App.3d 531, 2010-Ohio-2455.]

Court of Appeals of Ohio,
First District, Hamilton County.

Nos. C–080830 and C–080832.

Decided June 4, 2010.

</div>

532

Joseph T. Deters, Hamilton County Prosecuting Attorney, and Judith Anton Lapp, Assistant Prosecuting Attorney, for appellee.

Sheldon Fain, pro se.

---

DINKELACKER, Judge.

{¶ 1} An application to reopen an appeal must be granted if the applicant establishes "a 'genuine issue' as to whether he has a 'colorable claim' of ineffective assistance of counsel on appeal."[1]  The United States Supreme Court's decision in *Strickland v. Washington*[2] provides the standard for determining whether the applicant was denied the effective assistance of appellate counsel.[3] The applicant must prove that "his counsel [performed] deficient[ly] [in] failing to raise the issues he now presents and that there was a reasonable probability of success had [counsel] presented those claims on appeal."[4]

{¶ 2} In his application to reopen these appeals, defendant-appellant Sheldon Fain contends that he was denied the effective assistance of counsel because his appellate counsel failed to assign as error the sufficiency of the evidence to support his convictions.  Appellate counsel submitted Fain's appeals consistent with the procedure set forth in *Anders v. California.*[5]  In affirming Fain's convictions, we necessarily concluded that Fain had entered his guilty pleas knowingly, voluntarily, and intelligently.  By his knowing, voluntary, and

---

1.  *State v. Spivey* (1998), 84 Ohio St.3d 24, 25, 701 N.E.2d 696;  App.R. 26(B)(5).

2.  *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674.

3.  See *State v. Reed* (1996), 74 Ohio St.3d 534, 535, 660 N.E.2d 456.

4.  *State v. Sheppard* (2001), 91 Ohio St.3d 329, 330, 744 N.E.2d 770, citing *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph three of the syllabus.

5.  *Anders v. California* (1967), 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493.

intelligent guilty pleas, Fain waived his proposed challenge to the sufficiency of the evidence to support his convictions.[6] Therefore, appellate counsel was not ineffective in failing to assign this matter as error on appeal.

{¶ 3} Nor can appellate counsel be said to have been ineffective in failing to assign as error trial counsel's effectiveness in "failing to investigate or to submit reversible errors which would have rendered a different outcome." Fain does not specify what trial counsel's investigation would have disclosed or what "reversible errors" his trial counsel neglected to "submit." And the record does not otherwise demonstrate a reasonable probability of success had appellate counsel advanced this assignment of error on appeal.[7]

{¶ 4} Finally, Fain argues that appellate counsel was ineffective for failing to argue that his sentence was "contrary to law." Fain was convicted of trafficking in cocaine and having a weapon under a disability and was given "agreed" sentences. As part of his sentences, Fain's driver's license was suspended for both offenses. But R.C. 2923.13 did not authorize the trial court to suspend Fain's driver's license as part of his sentence for having a weapon while under a disability.

{¶ 5} Since the trial court improperly imposed a three-year driver's license suspension for that offense, that portion of the sentence was contrary to law. Accordingly, Fain's motion to reopen his appeals has merit. And since the suspension was contrary to law,[8] we vacate the driver's license suspension imposed by the trial court for the weapons-under-disability conviction. This ruling does not affect the three-year suspension that the trial court properly imposed for Fain's drug-trafficking conviction.

{¶ 6} And removal of the suspension is Fain's only remedy—he is not entitled to a new sentencing hearing. A defendant is entitled to a new sentencing hearing if the sentence he received is void.[9] A sentence is void when it does not contain a statutorily mandated term, like postrelease-control notification.[10] But a

---

6. See *State v. Wilson* (1979), 58 Ohio St.2d 52, 12 O.O.3d 51, 388 N.E.2d 745, paragraph one of the syllabus.

7. See *Sheppard*, 91 Ohio St.3d at 330, 744 N.E.2d 770, citing *Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph three of the syllabus.

8. See R.C. 2953.08(G)(2)(b).

9. See *State v. Bezak*, 114 Ohio St.3d 94, 2007-Ohio-3250, 868 N.E.2d 961, at ¶ 10, citing *State v. Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085, 817 N.E.2d 864, at ¶ 23.

10. Id.

driver's license suspension is not a "statutorily mandated term" akin to postrelease control.

{¶ 7} The Ohio Supreme Court has recently emphasized the fact that there are limited circumstances under which a sentence will be considered void. In *State v. Joseph*, the court addressed the issue whether the failure to inform a defendant of mandatory court costs renders a sentence void in the way it would if there is an omission related to postrelease control.[11] It does not. The court noted that "[t]he civil nature of the imposition of court costs does not create the taint on the criminal sentence that the failure to inform a defendant of postrelease control does. Nor does the failure to inform a defendant orally of court costs affect another branch of government. It affects only the court and the defendant."[12]

{¶ 8} In this case, the imposition of a duplicative driver's license suspension did not create the same concerns about the sentence that a failure to inform the defendant of postrelease control would have. Nor does it affect another branch of the government. The Bureau of Motor Vehicles will still be suspending Fain's license for three years as a result of the trafficking conviction.

{¶ 9} This conclusion is buttressed by the Ohio Supreme Court's most recent case to address the issue. *State v. Anthony* involved one count of attempted felonious assault and one count of having a weapon while under a disability.[13] Anthony was sentenced to seven years in prison and given a driver's license suspension.[14] The Supreme Court held that the suspension was not proper, because the use of a motor vehicle was not integral to the crime itself.[15] The court concluded by stating that "R.C. 4507.16(A)(1)(b) was improperly invoked and that the court of appeals erred in upholding the revocation of Anthony's driver's license. Accordingly, we reverse the decision of the court of appeals and *reinstate appellant's driver's license*."[16]

{¶ 10} In conclusion, we grant Fain's motion to reopen his appeal and modify his sentence for the weapon-under-a-disability conviction, striking the three-year

---

11. *State v. Joseph*, 125 Ohio St.3d 76, 2010-Ohio-954, 926 N.E.2d 278.

12. Id. at ¶ 21, quoting *State v. Threatt*, 108 Ohio St.3d 277, 2006-Ohio-905, 843 N.E.2d 164, ¶ 15.

13. *State v. Anthony*, 96 Ohio St.3d 173, 2002-Ohio-4008, 772 N.E.2d 1167.

14. Id. at ¶ 2.

15. Id. at ¶ 18.

16. (Emphasis added.) Id. at ¶ 19.

driver's license suspension. Having so modified the sentence, we affirm the judgment of the trial court.

Judgment affirmed as modified.

HENDON, J., concurs.

CUNNINGHAM, P.J., concurs in part and dissents in part.

CUNNINGHAM, Presiding Judge, concurring in part and dissenting in part.

{¶ 11} I concur in the majority's holding that appellate counsel was not ineffective in failing to assign as error either the sufficiency of the evidence or trial counsel's effectiveness in investigating or advancing unspecified "reversible errors." And I concur in its judgment to the extent that it reopens the appeals based on appellate counsel's ineffectiveness in failing to assign as error the unauthorized driver's license suspension imposed as part of Fain's sentence for having weapons while under a disability. But I dissent from its judgment to the extent that it here decides the reopened appeals. And I disagree with its disposition of the reopened appeals.

## I

{¶ 12} The majority grants Fain's App.R. 26(B) application to reopen his appeals based on appellate counsel's ineffectiveness in failing to assign as error the unauthorized driver's license suspension and then proceeds to decide the assignment of error. It concludes that under current Ohio Supreme Court jurisprudence, the unauthorized license suspension did not render Fain's sentence "void" and that Fain's "remedy" is, therefore, limited to the "removal of the suspension." And it enters judgment accordingly.

{¶ 13} Thus, the majority accedes to the mandate of App.R. 26(B)(5) and grants Fain's application to reopen his appeals. But it does not afford Fain counsel and the process provided by App.R. 26(B) and other relevant Appellate Rules. Instead, it exercises the authority conferred upon a court of appeals deciding a direct appeal[17] and "modif[ies]" Fain's judgment of conviction by "striking" the unauthorized license suspension. This the court may not do.

---

17. See R.C. 2953.07 (authorizing "an appellate court [to] affirm the judgment or reverse it, in whole or in part, or modify it, and order the accused to be discharged or grant a new trial[,] * * * [or] remand the accused for the sole purpose of correcting a sentence imposed contrary to law"); R.C. 2953.08(G)(2) (permitting an appellate court to "increase, reduce, or otherwise modify a [felony] sentence that is appealed under this section" or to "vacate the sentence and remand the matter to the sentencing court for resentencing" if the sentence is "contrary to law").

{¶ 14} This matter is before us not on direct appeal, but on Fain's App.R. 26(B) application to reopen his direct appeals. In 1992, in *State v. Murnahan,*[18] the Supreme Court sought to fill a procedural void by providing a "means for enforcing [the] right to effective counsel at the appellate level,"[19] when appellate counsel's ineffectiveness had not been discovered until after the time had expired for reconsideration by the court of appeals or for a direct appeal to the Supreme Court.[20] A year later, in the wake of,[21] and with the purpose of superseding,[22] its decision in *Murnahan,* the court adopted App.R. 26(B).

{¶ 15} In applying App.R. 26(B), the Supreme Court has declared, and this court has acknowledged, that App.R. 26(B) "creates a special procedure" by which an appellant may "vindicate" his right to the effective assistance of appellate counsel.[23] The rule was "specifically designed" to provide a "separate" and "specialized" "collateral postconviction proceeding[ ]" for challenging the outcome of an appeal, based on a claim that appellate counsel had been ineffective in prosecuting the appeal.[24]

{¶ 16} As the rule's drafters noted, App.R. 26(B) contemplates a "two-stage [reopening] procedure. The first stage involves a threshold showing for obtaining permission to file new appellate briefs" in a reopened appeal.[25] Thus, during the first stage, an "appellate court's mandate in addressing a timely filed application for reopening is to determine whether [a] 'genuine issue' exists" as to appellate counsel's ineffectiveness,[26] and if so, to grant reopening.[27]

{¶ 17} For purposes of the reopening procedure's "second stage," the rule requires the court to appoint counsel to represent an indigent applicant.[28]

---

**18.** *State v. Murnahan* (1992), 63 Ohio St.3d 60, 584 N.E.2d 1204.

**19.** Id. at 67, 584 N.E.2d 1204 (Sweeney, J., dissenting).

**20.** Id. at 65–66, 584 N.E.2d 1204.

**21.** See *Morgan v. Eads,* 104 Ohio St.3d 142, 2004-Ohio-6110, 818 N.E.2d 1157, ¶ 6; 1993 Staff Note to App.R. 26.

**22.** See *State v. Davis,* 119 Ohio St.3d 422, 2008-Ohio-4608, 894 N.E.2d 1221, ¶ 13.

**23.** *Davis* at ¶ 26; accord *State v. Dieterle,* 1st Dist. No. C–070796, 2009-Ohio-1888, 2009 WL 1099481, ¶ 48 (citing *Morgan* at ¶ 2–9).

**24.** *Morgan,* syllabus, and ¶ 7–8, 10; see *Murnahan,* 63 Ohio St.3d at 65–66, 584 N.E.2d 1204 and fn. 6.

**25.** 1993 Staff Note to App.R. 26; see App.R. 26(B)(1) through (5).

**26.** *Davis* at ¶ 17.

**27.** See App.R. 26(B)(5).

Neither the state Constitution nor the federal Constitution requires that counsel be appointed for an indigent applicant either to pursue reopening or to prosecute a reopened appeal.[29] Nevertheless, Ohio has chosen to provide for the appointment of counsel for an indigent defendant in a reopened appeal.[30] And the "second stage" events demonstrate why.

{¶ 18} The reopening procedure's second stage, after an appeal has been reopened and after counsel has been appointed, "proceed as on an initial appeal in accordance with [the Appellate Rules]."[31] Specifically, the second stage involves new counsel filing appellate briefs and supporting materials, taking action to have the record transmitted to the court of appeals[32] and advocating on the applicant's behalf at oral argument or at an evidentiary hearing "if the court of appeals determines that an evidentiary hearing is necessary."[33]

{¶ 19} Although during the second stage a reopened appeal generally "proceeds as on an initial appeal[,] * * * the court may limit its review to those assignments of error and arguments not previously considered."[34] Thus, in a reopened appeal, the appellant in his brief and the court in its review are constrained by considerations of res judicata, but are not limited to those claims of appellate counsel's ineffectiveness deemed "colorable" in the first stage of the reopening procedure.

{¶ 20} Fain, in the reopening procedure's first stage, established a genuine issue as to whether he has a colorable claim of his appellate counsel's ineffectiveness. As the Supreme Court has noted, "[a] substantive review of the claim is an essential part of a timely filed App.R. 26(B) application."[35] But different standards of review govern the court's exercise of its authority to reopen an appeal[36] and its authority to decide the reopened appeal.[37] And the matters to be

---

28. See App.R. 26(B)(6)(a).

29. *Morgan* at ¶ 19.

30. Id.; App.R. 26(B)(6)(a).

31. App.R. 26(B)(7).

32. 1993 Staff Note to App.R. 26; see App.R. 26(B)(7).

33. App.R. 26(B)(8).

34. App.R. 26(B)(7).

35. *Davis* at ¶ 26.

36. See App.R. 26(B)(5).

37. See App.R. 26(B)(9).

decided in the reopened appeal may extend beyond the matters decided in reopening the appeal.[38] Consequently, a court's determination that an App.R. 26(B) claim is colorable is not determinative of the court's ultimate disposition of a reopened appeal. And by the terms of App.R. 26(B), a court has no authority to dispose of a reopened appeal before the applicant has been afforded counsel and the process provided under the Appellate Rules and before the adversarial process has been brought to bear on the matters advanced in the reopened appeal.

{¶ 21} Only at the close of the second stage, only after Fain has been afforded counsel and the process provided by the Appellate Rules, and only upon a "find[ing] that the performance of appellate counsel was deficient and [that Fain] was prejudiced by that deficiency," may this court "vacate its prior judgment and enter the appropriate judgment,"[39] i.e., a judgment authorized by R.C. 2953.07 and 2953.08(G)(2).[40] Therefore, I would not, at this juncture, finally decide the reopened appeals.

## II

{¶ 22} The majority, in finally deciding the appeals, concludes that the unauthorized license suspension did not render Fain's sentence "void." And based on that conclusion, it enters judgment "modify[ing]" the judgment of conviction by "striking" the unauthorized license suspension.

{¶ 23} I agree with the majority that the ultimate disposition of Fain's appeals might turn upon the issue of whether his sentence was void. But I disagree with its conclusion that the sentence was not void.

{¶ 24} Citing the Supreme Court's recent decisions in *State v. Jordan*[41] and *State v. Bezak*,[42] the majority acknowledges that "[a] defendant is entitled to a new sentencing hearing if the sentence he received is void" and that "[a] sentence is void when it does not contain a statutorily mandated term, like postrelease-control notification." But the majority insists that Fain's sentence was not void, because "a driver's license suspension is not a 'statutorily mandated term' akin to postrelease control."

---

38. See *Davis* at ¶ 26.

39. App.R. 26(B)(9).

40. See 1993 Staff Note to App.R. 26.

41. *State v. Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085, 817 N.E.2d 864.

42. *State v. Bezak*, 114 Ohio St.3d 94, 2007-Ohio-3250, 868 N.E.2d 961.

{¶ 25} *Jordan* and *Bezak* cannot, as the majority would have them, be so closely parsed. In those cases, the Supreme Court merely reaffirmed the vitality of its 1964 decision in *Colegrove v. Burns*[43] and its 1967 decision in *Romito v. Maxwell*.[44] In *Colegrove*, the court held that a jail sentence imposed for a probation violation was "void" because it was not authorized by statute. The court reasoned that because "[c]rimes are statutory, as are the penalties therefor, and the only sentence which a trial judge may impose is that provided for by statute[,] [a] court has no power to substitute a different sentence for that provided for by law or [to impose a sentence] that is *either greater or lesser than that provided for by law.*"[45] Twenty years later, in *State v. Beasley*, the Supreme Court followed *Colegrove* to hold that a sentence that did not include a statutorily mandated prison term was void.[46] Twenty years after *Beasley*, the court in *Jordan* followed *Beasley* to hold that a trial court's failure to provide statutorily mandated postrelease-control notification rendered the sentence void and required resentencing.[47]

{¶ 26} In 1967 in *Romito*, the court declared that "[t]he effect of determining that a judgment is void is well established. It is as though such proceedings had never occurred; the judgment is a mere nullity and the parties are in the same position as if there had been no judgment."[48] Forty years later, in *Bezak*, the court followed *Romito* to hold that a sentence that was void for lack of postrelease-control notification had to be vacated and that the case had to be remanded for a new sentencing hearing.[49]

{¶ 27} Before and after the postrelease-control cases, this court has followed *Colegrove*, *Beasley*, and *Romito* to vacate as void, and to remand for resentencing, a sentence that excluded a statutorily mandated fine;[50] sentences that fell

---

43. *Colegrove v. Burns*, (1964), 175 Ohio St. 437, 25 O.O.2d 447, 195 N.E.2d 811.

44. *Romito v. Maxwell* (1967), 10 Ohio St.2d 266, 39 O.O.2d 414, 227 N.E.2d 223; see *State v. Simpkins*, 117 Ohio St.3d 420, 2008-Ohio-1197, 884 N.E.2d 568, ¶ 20.

45. (Emphasis added.) *Colegrove*, 175 Ohio St. at 438, 25 O.O.2d 447, 195 N.E.2d 811.

46. *State v. Beasley* (1984), 14 Ohio St.3d 74, 75, 14 OBR 511, 471 N.E.2d 774 (holding that the trial court's correction of a statutorily incorrect sentence did not violate defendant's double-jeopardy rights).

47. *Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085, 817 N.E.2d 864, at ¶ 23 and 26.

48. (Citations omitted.) *Romito*, 10 Ohio St.2d at 267, 39 O.O.2d 414, 227 N.E.2d 223.

49. *Bezak*, 114 Ohio St.3d 94, 2007-Ohio-3250, 868 N.E.2d 961, at ¶ 12.

50. See *State v. Fields*, 183 Ohio App.3d 647, 2009-Ohio-4187, 918 N.E.2d 204, ¶ 10.

outside the statutory range;[51] and sentences that, without statutory authority, imposed a lifetime driver's license suspension,[52] community service,[53] home incarceration,[54] driving privileges,[55] restitution,[56] a driver's intervention program,[57] alcohol treatment,[58] and an indefinite sentence.[59]  In the wake of the postrelease-control cases, other appellate districts have also continued to follow *Colegrove*, *Beasley*, and *Romito* to vacate as void, and to remand for resentencing, a sentence that was unauthorized for reasons other than the lack of postrelease-control notification.[60]

{¶ 28} Finally, in its 2008 decision in *State v. Simpkins*, the Supreme Court cited *Colegrove* in explaining that "[t]he underpinning of [the court's] decisions from *Beasley* to *Bezak* is the fundamental understanding that no court has the authority to substitute a different sentence for that which is required by law. (Citation omitted.)  Because no judge has the authority to disregard the law, a sentence that clearly does so is void."[61]

{¶ 29} The majority cites the Supreme Court's recent decision in *State v. Joseph*[62] to argue that the imposition of an unauthorized driver's license suspen-

51.  *State v. Harmon*, 1st Dist. No. C–070585, 2008-Ohio-4378, 2008 WL 3981929; *State v. Washington*, 1st Dist. No. C–050462, 2006-Ohio-4790, 2006 WL 2640960; *State v. Tenhundfeld* (Apr. 23, 1986), 1st Dist. No. C–850661, 1986 WL 4791.

52.  *State v. Purdy* (Nov. 9, 2001), 1st Dist. No. C–010206, 2001 WL 1386188.

53.  See *Cincinnati v. Howard*, 179 Ohio App.3d 60, 2008-Ohio-5502, 900 N.E.2d 689.

54.  *State v. Krebs* (Nov. 20, 1991), 1st Dist. No. C–910135, 1991 WL 243622.

55.  *State v. Ussery* (Mar. 4, 1987), 1st Dist. No. C–860108, 1987 WL 7422.

56.  *State v. Bybee* (1999), 134 Ohio App.3d 395, 731 N.E.2d 232.

57.  *State v. Paulo*, 1st Dist. No. C–050725, 2006-Ohio-4035, 2006 WL 2241698.

58.  *State v. Johnson* (Jan. 9, 1985), 1st Dist. No. C–840263.

59.  *State v. Key* (Feb. 2, 1994), 1st Dist. Nos. C–930205 and C–930206, 1994 WL 25313.

60.  See, e.g., *State v. Ford*, 9th Dist. No. 24286, 2009-Ohio-3864, 2009 WL 2383002 (unauthorized suspended sentence); *State v. Kendrick*, 180 Ohio App.3d 662, 2009-Ohio-380, 906 N.E.2d 1174 (unauthorized lifetime suspension of hunting and fishing license); *State v. Lisboa*, 8th Dist. No. 89283, 2008-Ohio-571, 2008 WL 384141 (unauthorized term of community control); *State v. Ehlert*, 11th Dist. No. 2007–P–0032, 2008-Ohio-529, 2008 WL 351661 (unauthorized sanctions for minor misdemeanor).

61.  (Citation omitted.)  *State v. Simpkins*, 117 Ohio St.3d 420, 2008-Ohio-1197, 884 N.E.2d 568, ¶ 20;  accord *State v. Boswell*, 121 Ohio St.3d 575, 2009-Ohio-1577, 906 N.E.2d 422 (holding that a motion to withdraw a guilty or no-contest plea is a presentence motion if the sentence was void for lack of postrelease-control notification).

62.  *State v. Joseph*, 125 Ohio St.3d 76, 2010-Ohio-954, 926 N.E.2d 278.

sion is not one of those "limited circumstances under which a sentence will be considered void." The majority states that the imposition upon Fain of an unauthorized driver's license suspension is more analogous to the failure to advise Joseph concerning mandatory court costs (which does not render a sentence void) than it is to the failure to advise Jordan and Bezak concerning postrelease control (which does). The analogy does not hold.

{¶ 30} When imposed in a criminal proceeding, a driver's license suspension, like postrelease control, is a "sanction" imposed for the violation of a criminal statute.[63] In contrast, "[b]y being involved in court proceedings, [a] litigant, by implied contract, becomes liable for the payment of court costs if taxed as part of the court's judgment," and "[a] judgment for costs * * * may be collected only by the methods provided for the collection of civil judgments."[64] Thus, whether imposed in a criminal or a civil proceeding, "[t]he duty to pay court costs is a civil obligation arising from an implied contract."[65] Therefore, "costs are not punishment, but are more akin to a civil judgment for money."[66]

{¶ 31} Moreover, a trial court "does not act outside of its jurisdiction when it fails to require payment of court costs."[67] But a court acts without authority when it imposes a driver's license suspension that is not provided for by statute[68] or sanctions a violation of postrelease control that was not properly made a part of a sentence.[69]

{¶ 32} Finally, a trial court's failure to impose court costs does not "implicat[e] or [a]ffect * * * the powers of other branches of government";[70] but as the majority effectively acknowledges, a court's imposition of an unauthorized driver's license suspension, like its improper imposition of postrelease control, does. And because Fain's weapons-under-a-disability sentence and his drug-trafficking sen-

---

63. R.C. 2925.03(D)(2) and 2967.01(O).

64. *Strattman v. Studt* (1969), 20 Ohio St.2d 95, 49 O.O.2d 428, 253 N.E.2d 749, paragraph six of the syllabus (quoted in *Joseph* at ¶ 20).

65. Id.

66. *State v. Threatt*, 108 Ohio St.3d 277, 2006-Ohio-905, 843 N.E.2d 164, ¶ 15 (quoted in *Joseph* at ¶ 20).

67. *Joseph* at ¶ 18.

68. See *Simpkins* at ¶ 20 (holding that "no court has the authority to substitute a different sentence for that which is required by law"); *Purdy*, supra.

69. See *Hernandez v. Kelly*, 108 Ohio St.3d 395, 2006-Ohio-126, 844 N.E.2d 301; *Joseph* at ¶ 17.

70. *Joseph* at ¶ 19.

tence are separately reviewable, and not reviewable as a "package,"[71] the implications for the bureau of motor vehicles in enforcing Fain's unauthorized license suspension are not, as the majority suggests, legally irrelevant simply because his license remains subject to suspension as part of his drug-trafficking sentence. Therefore, *Joseph* is inapposite.

### III

{¶ 33} The majority concedes that the trial court, in sentencing Fain for having weapons while under a disability, had no authority to suspend his driver's license. The authorities are legion in support of the conclusion that the unauthorized sentence is void, requiring this court, in the reopened appeals, to vacate the sentence and to remand the case to the trial court for resentencing.

{¶ 34} But at this stage of the reopening proceedings, this court has no authority to finally decide the reopened appeals. Accordingly, I would, as mandated by App.R. 26(B), grant Fain's application to reopen his appeals,[72] appoint new counsel for the reopened appeals,[73] and order that the appeals "proceed as on an initial appeal in accordance with [the appellate] rules."[74]

---

71. See *State v. Saxon*, 109 Ohio St.3d 176, 2006-Ohio-1245, 846 N.E.2d 824, paragraphs one and two of the syllabus.

